OF THE

# Supreme Court of Florida,

AT

# FEBRUARY TERM, 1856,

## HELD AT JACKSONVILLE.

JAMES CHERRY, APPELLANT, VS. THE STATE OF FLORIDA.

1. When an indictment has upon it the usual indorsement of the title of the case together with a comprehensive designation of the offence charged, this court will, in view of the practice which is known to· prevail in the circuit courts, in regard to matters of this kind, view such indorsement as the act of the prosecuting officer, whose duty it is to prepare the bills ; and the words of " A true bill," which is the act of the Grand Jury, will be taken to refer to the offence as charged in the body of the indictment, and not to that designated in the indorsement.

2. Such indorsement of the prosecuting officer, is to be received only as a memorandum for the convenience of reference, and to distinguish the the paper from others of a similar character. It constitutes no part of the indictment—it imparts no vitality, nor does it give any validity to the instrument.

3. The Grand Jury have the right to qualify and limit their finding to any extent they may deem proper, under the circumstances and facts which may be developed in the investigation of the case; but such qualification or limitation must not be presumed. The finding must be taken to be general and referable solely to the offence *as charged in the body of the indictment*, unless it can be reasonably inferred from the collocation of the words, that such qualification or limitation were intended to be made.

4. It will not be permitted to distort the finding of the Jury, by forcibly connecting the words of the finding with the incomplete discription of the offence, to be found in the usual indorsement of the prosecuting attorney.

5. Every portion of the Record that comes up from the Circuit Court is entitled to equal credit: and if implicit credence is to be given to that portion which sets out the finding of the Jury, as recorded in the minutes of the Court, the same degree of credence is to be given to that portion which connects the finding with, and makes it applicable to the particular bill of indictment set out in the Record. Such an *identity* between the record of the finding and the particular bill of indictment, to which it is made to apply, as will leave no room for mistake or doubt, is all that is necessary.

6. The degree of strictness spoken of in the books as applicable to criminal jurisprudence, is such as is conformable to rational principles, and not such as is calculated to defeat the ends of the law.

7. The case of Holten vs. The State, (2 Fla. Rep., 476,) referred to and commented upon.

Appeal from a judgment of the Circuit Court for Duval County. The opinion of the Court embraces a full statement of the facts as disclosed by the record.

*E. Bissell, Jr.*, for Appellant.

*G. W. Call for Attorney General* for the State.

DU PONT, J., delivered the opinion of the Court.

The record in this case discloses, that at a term of the Circuit Court of Duval county, James H. Cherry, the appellant, was indicted, tried and convicted for the statutory offence of "living in a state of fornication with a colored female." The indictment is set out in extenso, and upon it are the following endorsements, viz:

"The State of Florida vs. James Cherry:—Fornication with a colored female."

"A true bill.             COLUMBUS DREW,
                                        *Foreman.*"

The record of the finding of the Grand Jury, as exhibited by the minutes of the Circuit Court, is in the following words, viz:

"And now, on this 24th day of March, A. D., 1855, came the Grand Jury into open Court and made the following presentment, to wit:

The State of Florida | Fornication with a colored female.
    vs.          |   A true bill."
James Cherry.    |

Immediately after the conviction a motion was made to arrest the judgment upon the following grounds, to wit:

1st. That it does not appear by the record in said cause that the Grand Jury found therein any true bill against the defendant for any offence against the law of the State.

2nd. Because it does not appear by said record that the Grand Jury found in said case a true bill against the defendant for the specified offence described in the indictment and given in charge to the Petit Jury upon the trial.

3rd. Because it does not appear from the record in said cause that the Petit Jury found therein the defendant guilty of any offence against any law of this State.

4th. Because it does not appear from said record that said Petit Jury found in said cause the defendant guilty of the specific offence described in the indictment and given in charge to them.

5th. Because the indictment does not contain a specific description of the female with whom the offence is alleged to have been committed.

6th. Because the record, indictment and proceedings in said cause are in these and other respects defective, informal and insufficient.

The motion in arrest of judgment was overruled by the court below, and the propriety of that ruling is now presented for our determination.

In the argument before this court two positions were assumed and insisted upon by the counsel for the appellant: first, that neither the record nor indorsements show

any offence known to the laws of this State; Secondly, that the said record and indorsements do not show the particular offence mentioned in the body of the indictment. Both of these propositions may be considered under one and the same head; for if either of them should be true, it is fatal to the conviction, and the judgment would, consequently, be reversed.

It was insisted in argument, that the indorsement of the words "fornication with a colored female," which appear upon the indictment, shows that the Grand Jury intended and did find the bill which was laid before them to be "true" only *quoad* the act of fornication, and negatived the idea that they intended to find it true as to the act of "living in a state of fornication," which is the specific offence designated in the statute, and the one particularly described and set forth in the body of the indictment. To show that a partial finding of this character is of no avail and does not convert the bill into an indictment, various authorities were cited, all of which we recognize as good law.

Chitty, in his work on criminal law, says: "The jury cannot find one part of the same charge to be true and another false, but they must either maintain or reject the whole; and therefore if they indorse a bill of indictment for murder " *billa vera se defendendo*," or *billa vera* for manslaughter, and not for murder, the whole will be invalid and may be quashed on motion." He also lays it down as a rule that the finding of the jury must be absolute and unconditional, and therefore a finding "*si domus non fuit in possessione dominæ reginæ tunc vera*" is of no avail and cannot be made the foundation for any further proceedings. So, if in the case of libel they find " *billa vera*," as to the words "*sed utrum maliciose, ignoramus*," for nothing can be done upon such an indictment. Chitty's Criminal Law, 322.

To the same purpose is Archibold in his Treatise on Criminal Pleading, p. 60.

Mr. Wharton, in his Treatise on American Criminal Law, (page 181–2,) recognizes the doctrine as well established, and says: "If the finding be incomplete or insensible, it is bad. Where the Grand Jury returned a bill of indictment which contained ten counts for forging and uttering the acceptance of a bill of exchange with an indorsement "A true bill on both counts," and the prisoner pleaded to the whole ten counts, and after the case for the prosecution had concluded, the prisoner's counsel pointed this out, the finding was held bad, and the Grand Jury being discharged, the judge would not allow one of the Grand Jurors to be called as a witness to explain the finding."

There being no controversy with regard to these well established principles, we are led to enquire, in the first place, what the Grand Jury did in fact find when they presented to the court the indictment upon which the appellant was actually tried and convicted; and this enquiry very naturally involves the consideration of the effect to be given to the various indorsements which are to be found thereon, as the same are presented by the record.

To hold that by legal intendment every indorsement which appears upon an indictment is the act of the Grand Jury, and to be taken to be the expression of their will, would be as dangerous to the salutary enforcement of the criminal laws of the country, as it would be subversive of the plainest dictates of enlightened reason. It would be to substitute a violent presumption for a known fact. It is the duty of the court, in considering a question of this kind to have reference to the *practice* of the prosecuting officers who are charged with the duty of preparing the bills of indictment to be laid before the Grand Jury; and it

will not be attempted to be controverted that there is no
practice more universally observed by those officers than
that of indorsing upon the bill the title of the case and a
comprehensive designation of the nature of the offence
charged in the body of the bill, thus

The State of Florida ⎫
    vs.         ⎬   Larceny.
John Styles.      ⎭

Now, to say that by legal intendment this indorsement
must be taken to have been made by the Grand Jury,
would be to require of us to sacrifice the substance to
form, and thus, by the merest technicality, (the disregard
of which can never be attended with any detriment to the
person charged,) to defeat the claims of justice. We judi-
cially know that this indorsement is the act of the prose-
cuting officer, and that it is not the act of the Grand Jury,
and, in the face of this knowledge, we do not feel that we
should be in the line of our official duty, were we, by a
strained technical interpretation, to make the record speak
a language which we know to be false. This indorsement
is, in fact, no part of the indictment. It is not attested by
the Grand Jury as their act. It stands upon the back of
the indictment, distinct and separate from the indorsement
of the words " A true bill," which is the act of the Grand
Jury, authenticated as such by the name of the foreman
attached thereto. It is a mere *memoranda* of the prose-
cuting officer, placed there for the convenience of refer-
ence, to distinguish it from other papers of a similar char-
acter, and the indictment would be just as valid without
as with the indorsement. It imparts no vitality, nor does
it give any validity to the instrument. But it was insisted
by counsel, that it was to be presumed where a Grand
Jury entered upon the investigation of an offence, they
had reference solely to the particular offence designated

by the indorsement, and that their finding must be limited to the offence so designated; that they never look beyond such indorsement, and make no reference to the offence as charged in the body of the bill; that if the offence, as contained in the indorsement, is defectively designated, so as to be either *incomplete* or *insensible*, the finding will be bad.

We are clearly of opinion, that the premises upon which the argument is based are false in point of fact, and, consequently, the argument, and with it the conclusion must fail. It is manifestly the duty of the Grand Jury, when called upon to discharge the grave and responsible functions of their high offce, to examine, in the first place, with due care and deliberation, the bill which may be laid before them, in order to ascertain the character of the charge. It is not to be presumed that officers of such high dignity, and upon whom such mighty responsibilities devolve, will proceed to discharge their duties in a careless or negligent manner. It is true that this body is not usually composed of lawyers; but the law of their constitution has assumed that they are competent to the discharge of their appropriate functions; and a proper deference for a co-ordinate branch of the judiciary would lead us to the conclusion, that in the discharge of those duties they are ever zealous in the observance of a degree of circumspection fully commensurate with the high responsibility of their station. Besides, they have, in the person of the prosecuting attorney, a law officer whose duty it is to instruct them upon all legal points. They also have at all times free access to the presiding Judge for the solution of all legal questions with regard to which they may desire information.

It was further insisted, as a matter of argument, that a defective designation of the offence, as named in the in-

21

dorsement, might and probably would operate to mislead the Grand Jury into a finding different from that which they may have intended. Such mischief, should it occur, would be clearly referable, not to any want of soundness in the principles which we have laid down for the government of their investigations, but to a disregard of those principles and a culpable neglect of duty.

It is not denied that a Grand Jury have the right to qualify and limit their finding to any extent that they may deem proper under the circumstances and facts which may be developed by the investigation of the case; and the effect of that qualification or limitation will be either to reduce the finding to the lesser offence charged in the body of the bill, or to entirely invalidate it as an *indictment*. In the latter case, it may be viewed as an indication to the prosecuting officer to prepare a bill suitable to the facts of the case. But a limitation or qualification of the finding must not be presumed. The finding must be taken to be general and referable solely to the charge set forth in the body of the indictment, unless it can be reasonably inferred from the collocation of the words that such qualification or limitation were intended. It will not be permitted to distort the finding of the jury by forcibly connecting the words of the finding (as is sought to be done in this case) with the incomplete description of the offence to be found in the usual indorsement of the prosecuting attorney. The argument of the appellant's counsel proceeds upon the assumption, first, that the indorsement referred to is essential to the validity of the indictment, and, secondly, that, as an essential part of the indictment, it should, to be good, contain a full and complete designation of the offence intended to be charged.

Neither of these positions are we prepared to admit. We have before intimated that the usual indorsement of

the prosecuting attorney constitutes no portion of the indictment, and that the indictment would be as valid were no such indorsement placed upon it. As a mere memoranda of the prosecuting officer, placed thereon for the convenience of reference, it is sufficient that the indorsement contain a comprehensive designation of the offence· Were it otherwise, there are many statutory offences which it would be unsafe to attempt to designate otherwise than by incorporating all the ingredients necessary to constitute a formal and legal charge, and for the accomplishment of which the back of the indictment would not afford sufficient space. As a matter of precaution, however, the designation of the offence in the indorsement ought not to be so foreign from the character of the offence charged in the body of the indictment as to be calculated to mislead the jury in their investigations.

The indorsement in this case, we think is sufficiently descriptive to point with unerring certainty to the particular offence charged in the body of the bill, and that it could not by any probability operate to mislead them.— The act of fornication, though not constituting the entire offence, is, however, the gravamen, and had the indorse_ ment been merely " Fornication," it would not, in our opinion, have invalidated the indictment.

Thus far we have addressed ourselves exclusively to the bill of indictment, with the several indorsements thereon, and the conclusion that we have arrived at is, that it is sufficient both in form and substance to support the con_ viction had thereon.

We now approach the consideration of another point in the case, which at the first blush would seem to involve an enquiry of greater difficulty, viz : The validity of the finding of the Grand Jury as set forth and recorded *in the minutes of the proceedings of the Circuit Court.* That

Record is as follows: "And now on this 24th day of March, A. D. 1855, came Grand Jury into open Court and made the following presentment to-wit:

The State of Florida, ⎫ Fornication with a colored female.
　　　　vs.　　　　 ⎬　　 A true bill."
　James Cherry.　 ⎭

Standing by itself—isolated and unconnected with the other parts of the record, we greatly doubt whether such a record of the finding would be sufficient, for in the lan-guage of the objection, it would be the finding of an offence not known to the law. But such isolation does not exist; the same record that informs us of the character of the find-ing, also informs us, (by setting it out in extenso) of the particular bill of indictment then and there presented.

Every portion of the record before us is entitled to equal credit, and if we give credence to that portion of it which sets out the finding, we must give the same degree of cre-dence to that portion which connects the finding with and makes it applicable to the particular bill of indictment upon which the appellant was tried and covicted. The rule which requires the observance of great particularity in the record of the finding, is based upon the principles of enlightened sense, and it is but reasonable that the ap-plication of the rule should be subjected to like principles. All that is necessary in a case like this is, that there should be such an identity between the record of the finding and the particular bill of indictment to which it is made to ap-ply, as to leave no room for mistake or doubt. This record, we think, furnishes that identity, and the appellant has therefore had the benefit of the rule.

It has been said by some who contend for a greater de-gree of strictness, that the record of the finding must be so fully perfect and complete of itself as not to require any extraneous aid in order to establish its identity with and

Cherry vs. The State—Opinion of Court.

applicability to the particular offence for which the party may be tried. To demonstrate the unsoundness of this doctrine, suppose that the Grand Jury should return into Court at the same time, two separate bills of indictment against one and the same individual—the one for the murder of A. and the other for the murder of B. The usual record of the finding in each case would simply be, that the Grand Jury came into Court on a certain day of the term and made a presentment against the party for " murder," without designating for the murder of A. or for the murder of B. Suppose further, that the party is tried and convicted upon only one of these indictments and he brings his case to this Court upon a Writ of Error. By what means other than by a reference to the indictment spread out upon the record could we establish the necessary identity between the record of the finding and that particular indictment ? The name of the party murdered is mentioned in neither of the findings and it seems to us that it would be morally impossible to establish the identity without a resort to the indictment itself. This example among many others that might be cited, clearly illustrates the unsoundness, and indeed, the utter impracticability of the doctrine contended for.

But there is another view of the question which to our mind is equally convincing. The same reason that exists for our taking notice of the practice of the prosecuting attorneys with regard to the indorsements which they usually put upon the bills that they prepare for the action of the Grand Juries, equally operates to induce us to take notice of the practice of the Clerks with regard to the entry of the findings upon the minutes of the Court. We know officially, that it is the invariable practice of the Clerks in entering the findings of the Grand Jury, to adopt the designation of the offence contained in the indorsement of

the prosecuting attorney.   To shut our eyes to this acknowl-
edged practice, would be to make a solemn farce of the
forms of criminal jurisprudence and to subvert the saluta-
ry ends of the law.   We are not insensible to the rule
which requires the proper observance of *strictness*, where
property, reputation and life are at stake ; but the degree
of strictness spoken of in the books is such as is conforma-
ble to rational principles and not such as is calculated to
defeat the ends of justice.

We are aware that in the views expressed in this opin-
ion, we have trenched somewhat upon the doctrines laid
down in one portion of the opinion delivered in the case of
Holten vs. The State, (2 Florida Reports, 476;) but without
intending to impugn the decision in that case, (which upon
a consideration of the whole record might very well be
sustained,) we may be permitted to express the opinion,
that upon this particular branch of that case, the Court
evidently pushed the argument to an extremity which
is sustained neither by sound reason, nor even by the prin
ciples of the case cited in its support.

Let the judgment of the circuit Court be affirmed with
costs.

PEARSON, J., dissented.